# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Kimberly Jean Brown, individually, <br>     Plaintiff, and <br><br> Brown-Washington Trust, <br>     Derivative Plaintiff on behalf <br>     of Legacy Complete <br><br><br>         vs. | Honorable <br> Jorge Alonso, <br>     presiding judge <br><br> Case # 24-cv-13132 <br><br><br> *DEMAND FOR* <br> *JURY TRIAL* |
| Scott Gartner; Lila Goldston; <br> Michael Greeby; Adam Kingsley; <br> John Koht; Michelle Montgomery; <br> Storm Vaske; Erika Williams; <br>       ("Individual Defendants"); <br> ;          and, <br><br> Grand Prix Printing, LLC; <br> Huge Legal Technology Company Inc; <br> James D. Montgomery & Associates, Ltd; <br> JP Morgan Chase Co; <br> Kingsley Law Group, PC; | **Jurisdiction by** <br> **Federal Question** <br> **18 U.S.C.§1964** <br> Violations of Racketeer <br> Influenced and <br> Corrupt Organizations <br><br> ***SECOND AMENDED*** <br> ***COMPLAINT*** |

Kohmedia LLC;

Lila E. Goldston Consulting LLC;

Merit Law Group, Inc;

    ("Corporate Defendants")


Legacy Complete

    ("Derivative Defendant")


## SECOND AMENDED COMPLAINT

Plaintiff Kimberly Jean Brown, acting individually, and, Derivative Plaintiff, Brown Washington Trust ("BW Trust") acting on behalf of Legacy Complete ("Legacy"), and demand a trial by jury on all issues so triable and, for their second amended complaint against Individual Defendants: Scott Gartner, Lila Goldston, Michael Greeby, Adam Kingsley, John Koht, Michelle Montgomery, Storm Vaske, Erika Williams; and, Corporate Defendants: Grand Prix Printing, LLC; Huge Legal Technology Company Inc; James D. Montgomery & Associates, LTD; JP Morgan Chase Co; Kingsley Law Group PC; Kohmedia LLC; Lila E. Goldston Consulting LLC; and Merit Law Group, Inc; allege the following:

## Table of Contents

**BASIS FOR JURISDICTION AND VENUE**........................................................................**5**

    BACKGROUND...........................................................................................................13

    OVERVIEW...............................................................................................................13

    HIRING KOHMEDIA....................................................................................................14

        *Exhibit Group A*

    BELLWETHER COLLECTION / MERIT CONTRACTS.........................................................19

        *Exhibit Group B*

    CONTRACTOR CASE / MERIT CONTRACTS..................................................................20

        *Exhibit Group C*

**COUNTS**...................................................................................................................26

**KOHMEDIA CONTRACT CLAIMS**.................................................................................26

    COUNT 1: BW TRUST CLAIMS DEFENDANT KOHMEDIA BREACHED THE KOHMEDIA
CONTRACT................................................................................................................26

    COUNT 2, 3, 4, 5, 6, AND 7: WITH RESPECT TO THE APP, PLAINTIFFS CLAIM
DEFENDANTS GOLDSTON, KOHT, MONTGOMERY, WILLIAMS, HUGE LEGAL AND
KOHMEDIA, VIOLATED THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT (815 ILCS 510/1-
7) (COUNT 2); AND/OR, VIOLATED THE ILLINOIS CONSUMER FRAUD ACT (815 ILCS
505/1-12) (COUNT 3); AND/OR, FRAUDULENTLY CONCEALED THEIR ACTIONS (COUNT 4);
AND/OR, MISAPPROPRIATED LEGACY'S TRADE SECRETS VIOLATING 18 U.S.C. §1836
AND/OR 765 ILCS 1065/1 (COUNT 5); AND/OR, COMMITTED MAIL FRAUD 18 U.S.C.
§1341 (COUNT 6); AND/OR, COMMITTED WIRE FRAUD 18 U.S.C. §1343 (COUNT 7)......29

    COUNT 8, 9, 10, 11, AND 12: PLAINTIFFS CLAIM THAT DEFENDANTS BELLWETHER,
HUGE LEGAL, KOHMEDIA, GOLDSTON, GREEBY, KOHT, MONTGOMERY, VASKE AND
WILLIAMS TORTUOUSLY INTERFERED WITH THE KOHMEDIA CONTRACT (COUNT 8);
AND/OR, TORTUOUSLY INTERFERED WITH THE BUSINESS EXPECTANCY OF THE APP (COUNT
9); AND/OR, VIOLATED THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030
(COUNT 10); AND/OR, COMMITTED THE THEFT AND UNLAWFUL TRANSPORT OF THE APP,
VIOLATING 18 U.S.C. §2314 (COUNT 11); AND/OR, RECEIVED STOLEN PROPERTY
VIOLATING 18 U.S.C. §2315 (COUNT 12);....................................................................36

**MERIT CONTRACTS CLAIMS**......................................................................................42

    COUNT 13: MS. BROWN CLAIMS DEFENDANT MERIT LAW BREACHED THE MERIT
CONTRACTS..............................................................................................................42

COUNT 14: Ms. Brown claims Defendants Kingsley, Gartner, Merit Law and Kingsley Law breached their fiduciary duties and committed legal malpractice with respect to the Contractor Case and/or the Bellwether Judgment collection...................................................................................................... 45

COUNTS 15, 16, 17, 18, 19 and 20: With respect to the Merit Contracts, Ms. Brown claims Defendants Bellwether, Gartner, Goldston, Greeby, Huge Legal, Kingsley, Kingsley Law, Merit Law, Montgomery, Vaske, and Williams tortuously interfered with the Merit Contracts (Count 15); and/or, violated the Illinois Deceptive Trade Practices Act (815 ILCS 510/1-7) (Count 16); and/or, violated the Illinois Consumer Fraud Act (815 ILCS 505/1-12) (Count 17); and/or, fraudulently concealed material facts (Count 18); and/or, committed mail fraud 18 U.S.C. §1341 (Count 19) and/or committed wire fraud 18 U.S.C. §1343 (Count 20)..............................................................................52

RACKETEER INFLUENCED AND CORRUPT ORGANIZATION CLAIMS..........................58
COUNT 21: Plaintiffs claim Defendants Gartner, Goldston, Greeby, Kingsley, Kingsley Law, Kohmedia, Koht, Merit Law, Montgomery, Vaske, Williams, Bellwether, Huge Legal, Kohmedia violated the R.I.C.O Act 18 U.S.C. §1964, by violating 18 U.S.C. §1962(c, d)........................................................................58

OTHER CLAIMS..................................................................................................... 62
COUNT 22: Ms. Brown claims Defendants intentionally inflicted emotional distress...................................................................................................................62

COUNT 23: Plaintiffs claim Corporate Defendants are vicariously liable for the acts of their agents and employees...........................................................................63

COUNT 24: Plaintiffs claim Grand Prix is responsible for Defendant Bellwether's debts and obligations.................................................................................64

DAMAGES...............................................................................................................65

**BASIS FOR JURISDICTION AND VENUE**

1)  This matter includes allegations of violations of the Racketeer Influenced and Corrupt Organizations Act and the Court has jurisdiction of this matter under 18 U.S.C. §1964.  As set forth herein, Plaintiffs claim that through a series of racketeering activities spanning 10 years, certain Defendants violated 18 U.S.C. §1962(c, d), including but not limited to:

    A. Engaging in racketeering activities (18 U.S.C. §1962(c)) to:

        i. Fraudulently acquire Legacy's App;

        ii. Misappropriate trade secrets owned by Legacy;

        iii. Utilize racketeering activities to prevent Plaintiffs from discovering that assets owned by Legacy had been stolen; and,

        iv. Utilize racketeering activities to prevent Plaintiffs from having the financial resources to recover the stolen assets.

    B. Conspiring with other entities to commit racketeering activities to achieve the goals set forth herein. 18 U.S.C. §1962(d)

2)  Venue in this judicial district is proper under 28 U.S.C. §1391 as a substantial portion of the events giving rise to Plaintiffs' claims occurred in this District.

3)  On information and belief, each Individual Defendant is subject to this Court's general and specific personal jurisdiction. Each Individual Defendant, except Lila Goldston, Storm Vaske and Erika Williams, are citizens of the State of Illinois. Each Individual Defendant and Corporate Defendant (collectively, "Defendants") has sufficient minimum contacts within the State of Illinois, and this District, pursuant to due process and/or the Illinois Long Arm Statute:

   A.  Because each Defendant purposefully availed itself of the privileges of conducting business in the State of Illinois and in this District;

   B.  Because each Defendant conducts and/or solicits business within the State of Illinois and within this District; and/or,

   C.  Because the Plaintiffs' causes of action initially arose from Defendants' activities in the State of Illinois and this District.

4)  Derivative Defendant, Legacy Complete ("Legacy"), was established under Nevada's limited liability company statutes. However, the limited liability company designation was administratively dissolved in 2017 for failure to pay the annual fee to

the Nevada Department of Business Services.  Legacy has not conducted business since 2017.  Legacy is financially unable to participate in this lawsuit.  Since Ms. Brown is the trustee of the BW Trust which owns 75% of Legacy, a demand on Legacy to file this lawsuit is unnecessary. Legacy's mailing address is 1026 E. 46th St, Unit 2E, Chicago, IL 60653. Legacy is owned:

    A.   75% by BW Trust; and,

    B.   25% by the Charles V. Hamilton Living Trust (together, Dr. Charles V. Hamilton and his Living Trust are referred to as "Dr. Hamilton").

5) Derivative Plaintiff Brown Washington Trust ("BW Trust") asserts claims herein on behalf of the owners of Legacy.  BW Trust is organized under Illinois law and Ms. Brown is the trustee of BW Trust.  BW Trust has assigned the right to pursue this suit on behalf of BW Trust to Ms. Brown, acting in her individual capacity.  BW Trust's mailing address is 1026 E 46th St, Unit 2E, Chicago, IL 60653.

6) Plaintiff Kimberly Jean Brown ("Ms. Brown") is a citizen of Illinois.  Ms. Brown resides at 1026 E 46th St, Unit 2E, Chicago, IL 60653. Ms. Brown, BW Trust and Legacy are together referred to as "Plaintiffs".

7) Defendant Scott Gartner ("Defendant Gartner") is an individual and a citizen of Illinois. Defendant Gartner is the CEO of Merit Law Group, Inc and the mayor of the village of Antioch, Illinois. Antioch's Village Hall is located at 874 Main St, Antioch, IL 60002. Plaintiffs believe Defendant Gartner's home address is 1218 Goldfinch Lane, Antioch, IL 60002.

8) Defendant Lila Goldston ("Defendant Goldston") is an individual and a citizen of the State of Illinois or New York. Defendant Goldston owns and operates Defendant Goldston Firm. Plaintiffs believe that Defendant Goldston's home address is 88 E. Roosevelt Ave, Roosevelt, NY 11575.

9) Defendant Michael Greeby ("Defendant Greeby") is an individual and a citizen of Illinois. Defendant Greeby's work address is c/o Wilson Sporting Goods, 1 Prudential Plaza, 130 E. Randolph St., Chicago, IL 60601. Plaintiffs believe that Defendant Greeby's home address is either 1643 N. Humboldt Blvd , Apt 1, Chicago, IL 60647; 111 W. Polk St, Apt 813, Chicago, IL 60605; or 200 N. Dearborn, Unit 1505, Chicago, IL 60601.

10) Defendant Adam Kingsley ("Defendant Kingsley") is an individual and a citizen of Illinois. Defendant Kingsley owns and

operates Defendant Kingsley Law. Plaintiffs believe Defendant Kingsley's home address is 1822 W. Leland Ave, Chicago, IL 60640.

11) Defendant John Koht ("Defendant Koht") is an individual and a citizen of Illinois. Defendant Koht owns and operates Kohmedia LLC. Plaintiffs believe Defendant Koht's home address is 520 Rio Vista Rd, Glenview, IL 60025.

12) Defendant Michelle Montgomery ("Defendant Montgomery") is an individual and a citizen of Illinois. Defendant Montgomery is a partner at Defendant Montgomery Firm. Plaintiffs believe Defendant Montgomery's home address is either 6901 S. Oglesby Ave, #3B, Chicago, IL 60649; or, 2315 S. Kolin Ave, Chicago, IL 60623.

13) Defendant Storm Vaske ("Defendant Vaske") is an individual and a citizen of Iowa. Defendant Vaske was formerly a citizen of Illinois and continues to have business dealings in Illinois. Defendant Vaske works for the Label Factory, an alias of Grand Prix Printing, LLC. Plaintiffs believe Defendant Vaske's home address is 2823 NW 34th Ln, Ankeny, IA 50023 and work address is the Label Factory, 1785 Guthrie Ave, Des Moines, IA 50316.

14) Defendant Erika Williams ("Defendant Williams") is an individual and a citizen of the state of California. Defendant Williams was formerly a citizen of Illinois, worked in Illinois, and continues to

conduct business in Illinois. Plaintiffs believe that Defendant Williams resides at 704 Pier View Way, Oceanside, CA 92054. Defendant Williams is represented by Patricia Brown Holmes and Lucas Rael of Riley, Safer, Holmes & Cancila, LLP, 70 W. Madison Street, Suite 2900, Chicago, Illinois 60602.

15) Defendant Grand Prix Printing, LLC, along with its aliases, is an Iowa limited liability company that merged with, and is the successor in interest to, Bellwether Creation Company LLC, an Illinois limited liability company which was voluntarily dissolved on or about June 30, 2017. Collectively, Bellwether Creation Company LLC, Grand Prix Printing LLC, and its aliases, are referred to as "Defendant Bellwether". Defendant Bellwether provides service to customers in Illinois. Defendant Bellwether's registered officer and office is Kent Vaske, 4111 NE Bellagio Circle, Ankeny, Iowa 50021 and its principal place of business is listed as 1785 Guthrie Ave, Des Monies, Iowa 50316.

16) Defendant Huge Legal Technology Company, Inc. ("Defendant Huge Legal") is a Delaware corporation. Defendant Huge Legal's CEO is Cody Barbo, and its principal place of business is 8605 Santa Monica Blvd, #40156, West Hollywood, CA 90069-1094. Plaintiffs believe Defendant Huge Legal is headquartered at 961 West Laurel,

San Diego, CA 92101. Defendant Huge Legal's registered agent is Corpnet, Inc., 1111 6th Ave, Suite 550, PMB 40156, San Diego, CA 92101-2115.

17) Defendant James D. Montgomery & Associates, Ltd. ("Defendant Montgomery Firm") is a law firm incorporated under the laws of the State of Illinois and has its principal place of business at 33 W. Monroe, Suite 1375, Chicago, IL 60603. Plaintiffs believe Defendants Montgomery and Montgomery Firm are represented by Chris S. Wunder and Eric D. Kaplan, Kaplan, Papadakis & Gournis, P.C. 180 N. LaSalle Street, Suite 2108, Chicago, Illinois 60601.

18) Defendant J. P. Morgan Chase & Co ("Defendant Chase") is a financial institution incorporated under the laws of the State of New York. Its principal place of business is 270 Park Avenue, New York, NY 10017-2070. Defendant Chase has hundreds of locations of its financial institutions in Illinois. Defendant Chase is represented by Patricia Brown Holmes and Lucas Rael of Riley, Safer, Holmes & Cancila, LLP, 70 W. Madison Street, Suite 2900, Chicago, Illinois 60602.

19) Defendant Kingsley Law Group, PC ("Defendant Kingsley Law") is incorporated under the laws of Illinois. Defendant Kingsley is the CEO of Defendant Kingsley Law which is registered at 2227 W. Leland

Ave, Chicago, IL. 60625 and has an office at 2122 W. Eastwood Ave, Chicago, IL 60625.

20) Defendant Kohmedia LLC ("Defendant Kohmedia") is a limited liability company organized under the laws of the State of Illinois. Defendant Kohmedia LLC is managed by Defendant Koht. Its principal place of business and registered office is 800 W. Huron St. Suite 3E, Chicago, IL 60642.

21) Defendant Lila E. Goldston Consulting ("Defendant Goldston Firm") is an Illinois limited liability company. Defendant Goldston Firm is managed by Defendant Goldston and has its principal place of business at 5201 S. Cornell, Unit 25D, Chicago, IL 60615. Defendants Goldston and Goldston Firm are represented by Lee Pulliam, Lee Pulliam and Associates, whose office is 70 E. Lake St, Suite 200, Chicago, IL 60601.

22) Defendant Merit Law Group, Inc. ("Defendant Merit Law") is incorporated under the laws of Illinois. Defendant Scott Gartner is the CEO of Defendant Merit Law which has its registered office and principal place of business at 345 Park, Suite 7, Antioch, IL 60002-1567.

## BACKGROUND

### Overview

23) Legacy is a company that was formed in 2015 to develop and operate an estate planning software-as-a-service application ("Legacy's Software"). Legacy's former manager and BW Trust's trustee, Ms. Brown, designed Legacy's Software and managed the software development teams.

24) Legacy completed the development of two versions of Legacy's Software. The first version of Legacy's Software was developed by Defendant Kohmedia and is referred to as the App. The second version of Legacy's Software was developed by Defendant Bellwether and is referred to as the Redesigned App.

25) Although the software development process was completed for both versions of Legacy's Software, both software developers refused to allow Legacy to release the completed software.

26) Plaintiffs allege that certain Defendants engaged in racketeering activities to have both versions of Legacy's Software fraudulently conveyed to unauthorized individuals.

27) Moreover, Plaintiffs believe certain Defendants utilized racketeering activities to cause Plaintiffs to experience extreme financial hardship to prevent them from discovering the theft and

restricting their ability to bring an action if they did discover the theft.

28) This complaint includes claims against the App. Claims against the Redesigned App are addressed in Brown v. ServiceNow, 25-cv-5629, Northern District of Illinois.

### Hiring Kohmedia[1]

29) One of the first actions Ms. Brown, Legacy's Manager, took after Legacy was formed in May 2015 was to hire a local software developer to build Legacy's software.

30) Defendant Kohmedia is owned and operated by John Koht ("Defendant Koht").

31) On or about June 19, 2015, Ms. Brown executed a written contract with Defendant Kohmedia, a Chicago-based software development firm, to build and service the first full version of Legacy's Software (the "App"). Legacy and Defendant Kohmedia executed the contract and the Reciprocal Confidentiality and Nondisclosure Agreement (together, the "Kohmedia Contract").

---

[1] Exhibit Group A

32)     The Kohmedia Contract includes provisions that required Defendant Kohmedia and its agents to protect Legacy's trade secrets and other intellectual property.

33)     The total amount of the Kohmedia Contract was $40,000. The Kohmedia Contract set forth milestones upon which payments were due to Defendant Kohmedia.  Legacy made all payments to Defendant Kohmedia by or before the milestone dates.  In total, Legacy paid Defendant Kohmedia approximately $30,000.

34)     Defendant Kohmedia delivered on time and as promised from June 2015 until late October 2015. However, beginning approximately the last week of October 2015, Ms. Brown experienced several items of concern.

35)     On or about November 7, 2015, while testing the App, Ms. Brown received an App-generated notification which directed Ms. Brown to a second domain, BuildDeployDestroy.com.  Ms. Brown clicked the link and found that a clone of the App was running on that domain. Ms. Brown attempted to log into the cloned App, but she was unable to do so.

36) Ms. Brown contacted Defendant Kohmedia who assured Ms. Brown that Defendant Kohmedia installed the App on a second domain which it typically does during testing. Defendant Kohmedia

represented to Ms. Brown that the BuildDeployDestroy.com domain was just one of the domains it owned and used for internal testing.

37) Ms. Brown believed Defendant Kohmedia's representations. The clone of the App remained active on BuildDeployDestroy.com until at least November 23, 2015.

38) On or about November 16, 2015, Defendant Kohmedia requested an extension to resolve some of the App's glitches found during testing. Ms. Brown granted Defendant Kohmedia's extension request.

39) On or about December 1, 2015, Defendant Kohmedia installed the App on Legacy's domain, LegacyComplete.com, and Ms. Brown began final user acceptance testing for the App.

40) However, after Defendant Kohmedia installed the App on LegacyComplete.com, Ms. Brown encountered technical issues with the App immediately. In fact, there were more glitches in the final version than there were in previous versions. In addition, Defendant Kohmedia, once quick to repair technical issues, became unresponsive.

41) On or about December 10, 2015, without forewarning or provocation, Defendant Kohmedia informed Ms. Brown that Defendant Kohmedia was not going to fix the software issues.

Instead, Defendant Kohmedia was going to default on the Kohmedia Contract.

42) In addition, Defendant Kohmedia stated that it would not return the $30,000 Legacy had already paid to Defendant Kohmedia.

43) Defendant Kohmedia represented to Ms. Brown that Defendant Kohmedia was abandoning the project due to staffing challenges. Ms. Brown had no reason to doubt Kohmedia's representation and there was no way to verify it.

44) Ms. Brown immediately notified Defendant Kohmedia that Defendant Kohmedia was in default of the Kohmedia Contract and demanded Defendant Kohmedia cure the default or refund Legacy's funds. Defendant Kohmedia refused.

45) Defendant Kohmedia assured Legacy that another developer would be able to easily repair the remaining issues in the App's software code.

46) Due to financial constraints, Legacy could not both sue Defendant Kohmedia and hire another developer to complete the App. Since Defendant Kohmedia maintained that the glitches in the App's software could easily be corrected by another software developer, Ms. Brown chose to utilize the remaining capital to hire a new developer to fix the App's software issues.

47) Defendant Kohmedia agreed to release the App's software to another developer that Legacy selected so that Legacy could attempt to mitigate its damages.

48) Ms. Brown was referred to software developer, Defendant Bellwether[2], by a member of an entrepreneurship incubator where Ms. Brown was a member.

49) On or about December 14, 2015, Legacy and Defendant Bellwether signed a confidentiality and non-disclosure agreement. Defendant Kohmedia then released the App's software code to Defendant Bellwether.

50) Legacy and Bellwether executed a contract to patch the App ("Bellwether Contract"). However, the Bellwether Contract and the joint venture that Legacy entered with Defendants Bellwether, Greeby and Vaske are addressed in 25-cv-5629 filed in Northern District of Illinois.

_____

[2] Bellwether Creation Company LLC ("Bellwether Creation") later merged with Grand Prix Printing ("Grand Prix") and are together referenced as "Defendant Bellwether".

**Bellwether Collection/Merit Contracts[3]**

51) Similar to Defendant Kohmedia, Defendants Bellwether, Greeby and Vaske breached the Bellwether Contract and joint venture with Legacy. On or about January 6, 2017, Ms. Brown filed a lawsuit, pro se, against Defendants Bellwether, Vaske and Greeby for unjust enrichment ("Unjust Enrichment Lawsuit").[4]

52) On or about February 23, 2018, Ms. Brown was awarded a default judgment against Defendant Bellwether for $436,000 ("Bellwether Judgment").

53) Being unfamiliar with collecting judgments, in or about July 2018, Ms. Brown hired Defendant Merit Law to collect the Bellwether Judgment for her. Defendant Adam Kingsley of Defendant Merit Law represented Ms. Brown.

54) Ms. Brown stressed to Defendant Kingsley the importance of collecting the Bellwether Judgment as soon as possible so that Ms. Brown could use the proceeds to file suit against Defendants Kohmedia, Bellwether, Greeby and Vaske on behalf of Legacy.

---

[3] Exhibit Group B

[4] Brown v Bellwether, Cook County Illinois, Law Division, 2017-L-000203.

55) Defendant Kingsley filed his appearance for the Bellwether Collections and he was issued one or more citations to discover Defendant Bellwether's assets.

56) However, in the seven years since Ms. Brown hired Defendants Merit Law and Kingsley to collect the Bellwether Judgment, they have not collected any of the $436,000 Bellwether Judgment that was awarded to Ms. Brown.

57) Defendant Kingsley at some point stopped pursuing the collection action but did not notify Ms. Brown. Defendant Kingsley and Defendant Merit Law remain the attorney and law firm of record for the Bellwether Judgment collection.

58) Since Defendant Kingsley remains the attorney of record, if any of Defendant Bellwether's account holders have responded to the citation(s) to discover Bellwether's assets, the citation responses would have been sent to the attorney of record, not Ms. Brown.

**Contractor Case / Merit Contracts** [5]

59) Prior to hiring Defendant Merit Law to collect the Bellwether Judgment, Ms. Brown retained Defendants Merit Law and Kingsley for another matter: to argue a summary judgment motion for Ms. Brown's

---

[5] Exhibit Group C

lawsuit against a home contractor who failed to complete repairs in Ms. Brown's home ("Contractor Case").

60) Ms. Brown prepared the summary judgment binders for the Contractor Case summary judgment motion and provided them to Defendant Kingsley.[6]  Ms. Brown also gave Defendant Kingsley a binder with her original receipts and damage documentation.

61) In or about May 2018, Defendant Kingsley successfully argued the summary judgment motion and the Contractor was found to be liable. However, Ms. Brown had not included damage calculations in her summary judgment motion.  Therefore, a separate damage prove-up hearing was necessary. Ms. Brown continued to retain Defendant Kingsley to represent her in the prove-up hearing for the Contractor Case.

62) Defendant Kingsley scheduled the damages prove-up hearing for October 2019 (approximately 16 months after Ms. Brown was awarded liability on summary judgment).  Ms. Brown requested an earlier date.  However, Defendant Kingsley represented that that was the earliest date.

63) Approximately one year after winning liability on summary judgment on the Contractor Case, and four months before the

---

[6] Ms. Brown prosecuted the case pro se before retaining Defendants Merit Law/Kingsley.

scheduled prove-up hearing, Ms. Brown agreed to a settlement amount for the Contractor Case.

64) By this point, Defendant Kingsley had resigned from Defendant Merit Law and he withdrew from representing Ms. Brown on the Contractor Case.[7] In addition, Ms. Brown had learned that Merit Law could not locate Ms. Brown's binder with her damages documentation.

65) Defendant Gartner of Defendant Merit Law agreed to step in to represent Ms. Brown only if Ms. Brown agreed that Defendant Gartner's representation would be limited to negotiating the settlement agreement for the Contractor Case.  Defendant Gartner stipulated that he was not willing to represent Ms. Brown in court. Ms. Brown agreed to limit Defendant Gartner's representation.

66) The settlement amount Ms. Brown agreed to was less than half of the amount of damages Ms. Brown could prove she incurred if she had her damages documentation. However, without the damages documentation, it would be difficult to prove the extent of Ms. Brown's damages.

---

[7] When he resigned from Merit Law, Defendant Kingsley withdrew as Ms. Brown's attorney of record for the Contractor Case.  However, Defendant Kingsley did not withdraw as Ms. Brown's attorney of record for the Bellwether Judgment collection.

67) When Ms. Brown agreed to the settlement amount, the only agreed-upon settlement terms were the settlement amount and the two-year repayment period.

68) Nevertheless, without Ms. Brown's permission and before a written settlement agreement had been circulated or executed, Defendant Gartner attended a court conference with the Contractor's attorney and represented to the court that a settlement agreement had been entered into.[8]

69) At the court conference, Defendant Gartner and the Contractor's attorney entered an agreed order to dismiss the Contractor Case, and the summary judgment award, with prejudice. Defendant Gartner took these actions without Ms. Brown's authorization.

70) Defendant Gartner had been adamant that he would not appear in court for the Contractor Case.[9] When Defendant Gartner appeared in court and dismissed the Contractor Case with prejudice, not only

---

[8] Ms. Brown had moved away from Illinois and did not attend the court conference.

[9] Ms. Brown was not opposed to Defendant Gartner appearing in court on her behalf. Ms. Brown was opposed to Defendant Gartner false representation to the court that the parties had entered into a settlement agreement and she was opposed to Defendant Gartner dismissing the summary judgment award without her approval.

was Defendant Gartner dismissing the case without Ms. Brown's permission, he did so without filing an appearance.[10]

71) When Defendant Gartner told Ms. Brown of his actions, Ms. Brown demanded Defendant Gartner immediately reverse the dismissal, insisting that the dismissal was premature. Ms. Brown told Defendant Gartner that there was no reason to dismiss the Contractor Case until after a written settlement agreement had been executed. However, Defendant Gartner refused to reinstate the Contractor Case.

72) A few months after Defendant Gartner dismissed the Contractor Case, the parties did not reach an agreement on the remaining settlement terms. Defendant Gartner then withdrew from representing Ms. Brown:

    A. without ensuring the verbally agreed upon settlement amount would be paid to Ms. Brown;

    B. without obtaining an executed written settlement agreement;

    C. without reinstating the summary judgment award in the Contractor Case; and,

---

[10] This is apparent in the fact that the docket entry incorrectly shows that Ms Brown initiated the agreed order pro se. However, Ms. Brown was in North Carolina at the time. The court's clerk likely inserted Ms. Brown's name as originator because Defendant Gartner had not filed an appearance.

D. without returning the binder with Ms. Brown's receipts and damage documentation so that Ms. Brown could conduct a damages prove-up hearing.

73) In 2020, Ms. Brown filed a malpractice suit against Defendants Gartner, Kingsley, Kingsley Law and Defendant Merit Law, in federal court.[11]  However, after pending for two and a half years, with 74 docket entries, the court dismissed the case for lack of subject matter jurisdiction.  The court held that Ms. Brown, who moved away from Illinois in 2018, and became a citizen of North Carolina in 2019, was again a citizen of Illinois when she filed the complaint for that lawsuit. Finding all parties to be citizens of Illinois, complete diversity of citizenship did not exist so the case was dismissed.

74) The court directed Ms. Brown to refile the complaint before December 21, 2024 in the proper venue.  Ms. Brown reasserts her claims in this suit which is before the court based on federal question jurisdiction.

_____

[11] Illinois Northern District, Brown v Gartner, 1:20-cv-05195

## COUNTS

### Kohmedia Contract

### COUNT 1: BW Trust claims Defendant Kohmedia breached the Kohmedia Contract

75) BW Trust re-alleges and incorporates by this reference each paragraph in this Complaint as if fully set forth here.

76) BW Trust alleges that Defendant Kohmedia breached the Kohmedia Contract.  Based on information and belief, BW Trust claims:

A.  Legacy and Defendant Kohmedia executed the written Kohmedia Contract on or about June 19, 2015;

B.  In the Kohmedia Contract, Defendant Kohmedia agreed to terms including but not limited to:

i.  Developing an online software application for Legacy (the App) as the first version of Legacy's Software;

ii.  Providing post-launch support for the App; and,

iii. Ensuring the confidentiality of Legacy's trade secrets.

C.  Legacy agreed to pay Defendant Kohmedia $40,000 for its performance for the Kohmedia Contract.

D. Legacy performed its obligations under the Kohmedia Contract by making payments to Defendant Kohmedia by or before the dates the payments were due.[12]

E. Defendant Kohmedia defaulted on the Kohmedia Contract by failing to perform its obligations under the Kohmedia Contract, including but not limited to:

  i. not delivering a complete and functioning App to Legacy;

  ii. not providing post-launch support to Legacy;

  iii. failing to keep Legacy's trade secrets confidential; and,

  iv. fraudulently transferring the App and Legacy's trade secrets to one or more unauthorized individuals.

F. When Defendant Kohmedia notified Legacy that it would be defaulting on the Kohmedia Contract, Legacy repeatedly requested that Defendant Kohmedia cure the default. However, Defendant Kohmedia refused.

G. In January 2016, following Defendant Kohmedia's default, Legacy attempted to mitigate damages by hiring another developer to complete the App. However, the new developer was unable to debug the App's software code. Thus, Legacy's damages were not mitigated.

---

[12] The remaining contract payments never became due.

H. Legacy declared Defendant Kohmedia was in breach of the Kohmedia Contract on or about January 6, 2017.

77) BW Trust claims that Defendant Kohmedia:

A. Knew that their actions would cause harm to Legacy;

B. Intended to harm Legacy; and,

C. Defendant Kohmedia's actions, or conspiracy to act, are a direct and proximate cause of Legacy's damages.

78) Legacy suffered significant damages as a result of Defendant Kohmedia's actions, or conspiracy to act, in an amount to be proven at trial.

79) BW Trust alleges that Defendant Kohmedia actively misled, engaged in affirmative acts to conceal, and/or conspired to mislead or conceal, material facts related to this claim to prevent Legacy from becoming aware of its harm. The concealed material facts include but are not limited to:

A. Defendant Kohmedia's motivation for defaulting on the Kohmedia Contract;

B. Defendant Kohmedia providing unauthorized individuals access to the App, its software code and Legacy's trade secrets; and,

C. Defendant Kohmedia fraudulently conveying a functional version of the App to one or more unauthorized individuals.

D. Defendant Kohmedia conveying a corrupted version of the App to the software developer Legacy hired to patch the App.

80) Legacy did not have actual or constructive knowledge of the concealed material facts. Legacy believed the misrepresentations and could not independently verify the concealed facts. As such, BW Trust asserts that the discovery rule applies to this claim and that the date of discovery was in or about October 2023.

**COUNT 2, 3, 4, 5, 6, and 7: With respect to the App, Plaintiffs claim Defendants Goldston, Koht, Montgomery, Williams, Huge Legal and Kohmedia, violated the Illinois Deceptive Trade Practices Act (815 ILCS 510/1-7) (Count 2); and/or, violated the Illinois Consumer Fraud Act (815 ILCS 505/1-12) (Count 3); and/or, fraudulently concealed their actions (Count 4); and/or, misappropriated Legacy's trade secrets violating 18 U.S.C. §1836 and/or 765 ILCS 1065/1 (Count 5); and/or, committed mail fraud 18 U.S.C. §1341 (Count 6); and/or, committed wire fraud 18 U.S.C. §1343 (Count 7)**

81) Plaintiffs re-allege and incorporate by this reference each paragraph contained in this Complaint as if fully set forth here.

82) Based on belief and information acquired in 2023, Plaintiffs allege Defendants Goldston, Kohmedia, Koht, Montgomery, and Williams violated the Illinois Deceptive Trade Practices Act (Count 2) and/or violated the Illinois Consumer Fraud Act (Count 3) by engaging

in deceptive trade practices, or conspiring to do so, with respect to the App. Moreover, Plaintiff claims Defendants Goldston, Kohmedia, Koht, Montgomery, and Williams fraudulently concealed their actions to minimize the likelihood that Legacy would discover their actions (Count 4).

A. Plaintiffs claim Defendant Kohmedia intentionally took, and/or conspired with one or more of the named Defendants to take, actions including but not limited to one or more of the following:

   i. Accepting payments from Legacy knowing that Defendant Kohmedia did not intend to deliver the completed App to Legacy;

   ii. Misrepresenting to Plaintiffs that Legacy's trade secrets were being kept confidential, then placing them, and the App's software code, on one or more unauthorized Internet domains, including but not limited to the domain BuildDeployDestroy.com;

   iii. Misrepresenting to Plaintiffs that Defendant Kohmedia routinely places software projects under development on an additional domain during testing for internal testing;

iv. Misrepresenting whether unauthorized users were being granted access to the App's software code and trade secrets via the second domain;

v. Intentionally corrupting the final version of the App's software code then transferring the corrupted version of the App to the new developer that Legacy hired to mitigate damages after Defendant Kohmedia's breach;

vi. Misrepresenting to Legacy that the corrupted version of the App was the most current version of the App;

vii. Transferring the fully-functional version of the App to one or more unauthorized individuals;

viii. Receiving compensation for granting unauthorized access to the App's software code and trade secrets;

ix. Receiving compensation for transferring the App's code and trade secrets to unauthorized individuals; and/or,

x. Receiving compensation for making false representations to Plaintiffs.

B. Moreover, Plaintiffs claim the named Defendants took, or conspired to take, actions including but not limited to one or more of the following:

    i.  Accessing the App's software code and trade secrets knowing that Legacy had not authorized access;

    ii.  Providing or receiving compensation for sharing the App's software code with one or more unauthorized individuals;

    iii. Providing or receiving compensation for making false representations to Plaintiffs;

    iv. Concealing, or conspiring to conceal, actions to prevent Plaintiffs from learning the truth behind the concealed facts.

83) Based on belief and information acquired in 2023, BW Trust alleges that Defendants Goldston, Koht, Montgomery, Williams, Kohmedia, and Huge Legal misappropriated Legacy's trade secrets contained in and related to the App (Count 5). BW Trust alleges:

    A.  Defendant Kohmedia placed the App's software code on an unauthorized domain(s) and allowed unauthorized individuals to access Legacy's trade secrets;

    B.  The named Defendants, or agents acting on their behalf, intentionally accessed Legacy's trade secrets knowing that Legacy had not given permission for their trade secrets to be revealed;

C. The misappropriation of Legacy's trade secrets affected interstate commerce.

84) Based on belief and information acquired in 2023, Plaintiffs allege Defendants Goldston, Koht, Kohmedia, Montgomery, and Williams committed, or conspired to commit mail fraud (Count 6), and/or wire fraud (Count 7) by carrying out a scheme to utilize the US Mail, phone and/or electronic communications to defraud Plaintiffs with respect to the Kohmedia Contract and its breach.[13] The wire and/or mail fraud occurred in the course of interstate commerce.

A. Plaintiffs claim Defendant Kohmedia intentionally took, and/or conspired with one or more of the named Defendants to take, actions including but not limited to:

i. Accepting Legacy's payments for the Kohmedia Contract delivered via US Mail and/or electronic transfer even though Defendant Kohmedia knew it would not be delivering the App to Legacy;

ii. Hosting daily and several weekly meetings with Plaintiffs over the phone and/or Internet to deceptively gather information from Plaintiffs;

---

[13] Additional details of specific instances of wire and mail fraud will be provided following discovery.

iii. Requesting via phone and/or electronic communications for Ms. Brown to use her time and effort in the App development process knowing that Legacy would not reap the benefit of her effort;

iv. Conspiring via phone and/or electronic communications to provide access to the App to one or more unauthorized individuals;

v. Providing unauthorized access to the App's software code on one or more unauthorized Internet domains; and,

vi. Using electronic communications to conceal their fraudulent acts from Plaintiffs.

B. In addition, Plaintiffs allege the named Defendants, or an agent acting on behalf of one or more of the named Defendants, took actions including but not limited to:

i. Conspiring with Defendant Kohmedia via phone and electronic communication to carry out fraudulent actions described herein; and,

ii. Knowingly and fraudulently accessing the App's software code over the Internet without authorization from Legacy.

85) Plaintiffs allege that the named Defendants actively misled, engaged in affirmative acts to conceal, and/or conspired to mislead or

conceal, material facts related to this claim which prevented Plaintiffs from becoming aware of their harm. Plaintiffs did not have actual or constructive knowledge of the concealed material facts. Plaintiffs believed the misrepresentations and could not independently verify the concealed facts. As such, Plaintiffs assert that the discovery rule applies to this claim and that the date of discovery was in or about October 2023.

86) Plaintiffs claim that:

    A. the named Defendants knew that their actions would cause harm to one or both Plaintiffs;

    B. the named Defendants intended to harm one or both Plaintiffs; and,

    C. the named Defendants' actions, or conspiracy to act, are a direct and proximate cause of Plaintiffs' damages.

87) Plaintiffs suffered significant damages as a result of the named Defendants actions, or conspiracy to act, in an amount to be proven at trial.

**COUNT 8, 9, 10, 11, and 12: Plaintiffs claim that Defendants Bellwether, Huge Legal, Kohmedia, Goldston, Greeby, Koht, Montgomery, Vaske and Williams tortuously interfered with the Kohmedia Contract (Count 8); and/or, tortuously interfered with the business expectancy of the App (Count 9); and/or, violated the Computer Fraud and Abuse Act, 18 U.S.C. §1030 (Count 10); and/or, committed the theft and unlawful transport of the App, violating 18 U.S.C. §2314 (Count 11); and/or, received stolen property violating 18 U.S.C. §2315 (Count 12);**

88) Plaintiffs re-allege and incorporate by this reference each paragraph in this Complaint as if fully set forth here.

89) Based on belief and information acquired in 2023, Plaintiffs allege that Defendants Goldston, Koht, Montgomery, and Williams tortuously interfered, or conspired to interfere, with the Kohmedia Contract and intentionally caused its breach (Count 8). Plaintiffs allege that the named Defendants, or agents acting on their behalf, intentionally committed, or conspired to commit, one or more actions including, but not limited to:

    A. The named Defendants were aware that the Kohmedia Contract is a valid contract when the named Defendants intentionally interfered with it;

    B. The named Defendants intentionally and willfully induced, or conspired to induce, Defendant Kohmedia to breach the Kohmedia Contract;

    C.  Defendant Kohmedia did in fact breach the Kohmedia Contract; and,

    D.  The named Defendants benefited from the breach of the Kohmedia Contract.

90) Based on belief and information acquired in 2023, Plaintiffs allege that Defendants Goldston, Greeby, Koht, Montgomery, Vaske, Williams, Bellwether, Huge Legal and Kohmedia tortuously interfered, or conspired to interfere, with Legacy's business expectancy of operating the App (Count 9). Plaintiffs allege that the named Defendants, or agents acting on their behalf, intentionally committed, or conspired to commit, one or more actions including, but not limited to:

    A.  Conspired with Defendant Kohmedia to transfer an intentionally corrupted version of the App to Plaintiffs while misrepresenting to Plaintiffs that the transferred version of the App was the most complete version of the App. By Defendant Kohmedia transferring a corrupted version of the App to Legacy, Legacy was unable to launch the App to generate revenue as expected;

    B.  Conspired with Defendant Kohmedia to fraudulently convey the fully-functional and launch-ready version of the App to

one or more of the named Defendants, instead of Legacy. By Defendant Kohmedia transferring a functioning version of the App to one or more named Defendants, the named Defendants were able to use Legacy's asset to generate revenue and raise capital for one or more of the named Defendants;

C. The named Defendants' actions not only lost Legacy revenue, but also usurped Legacy's competitive advantage of releasing the App as the first-of-its-kind product to market.

91) Based on belief and information acquired in 2023, Plaintiffs allege that Defendants Goldston, Koht, Montgomery, Williams, and Kohmedia violated, and/or conspired to violate, the Computer Fraud and Abuse Act (18 U.S.C. §1030) (Count 10). Plaintiffs allege that the named Defendants, or agents acting on their behalf, intentionally committed, or conspired to commit, one or more actions including, but not limited to:

A. Providing, or utilizing, unauthorized access to Legacy's digital assets which digital assets were in the care of Defendants Kohmedia or Koht and stored on servers owned or controlled by Defendants Kohmedia or Koht;

B. Cloning Legacy's data on Defendant Kohmedia's servers without Legacy's permission;

C. Transferring electronic data belonging to Legacy to one or more unauthorized individuals;

D. The value of the data obtained is greater than $5,000 and the named Defendants' actions affect interstate commerce.

92) Based on belief and information acquired in 2023, Plaintiffs allege that Defendants Goldston, Koht, Montgomery, Williams, and Kohmedia, committed, or conspired to commit, the theft and unlawful transport of the App and its trade secrets violating 18 U.S.C. §2314. (Count 11).

A. Plaintiffs allege the named Defendants:

i. Knew that the App belonged to Legacy;

ii. Knew that none of the named Defendants had the right to sell, transfer or transmit the software code for the App to one or more unauthorized individuals(s);

iii. Knew that none of the named Defendants had the right to sell, transfer or expose the App's trade secrets to one or more unauthorized individuals(s);

iv. Knew that the App was worth more than $5,000; and

v. Knew their actions affected interstate commerce.

B. Plaintiffs allege that the named Defendants, or agents acting on their behalf, intentionally committed, or conspired to commit, one or more actions including, but not limited to:

    i. Sold, transferred and/or transmitted the software code for the App without Legacy's authorization, and for compensation or other consideration;

    ii. Sold, transferred and/or exposed the App's trade secrets without authorization and for compensation or consideration;

    iii. Acted, or conspired to act, willfully and deliberately; and,

    iv. The sale, transfer or transmission crossed state lines.

93) Plaintiffs allege that Defendants Goldston, Koht, Montgomery, Williams, Kohmedia and Huge Legal received, or conspired to receive, the App and Legacy's related trade secrets, which are stolen property, violating 18 U.S.C. §2315. (Count 12).

A. Plaintiffs allege that the named Defendants:

    i. Knew that the App was stolen, or acquired by fraud, from Legacy;

    ii. Knew that the named Defendants were not authorized to utilize the App, or its trade secrets, to create derivative software;

B.  Plaintiffs allege that the named Defendants, or agents acting on their behalf, intentionally committed, or conspired to commit, one or more actions including, but not limited to

   i.  Received the App and its trade secrets from one or more of the named Defendants or an agent operating on their behalf;

   ii.  Accessed the App when creating derivative software; and,

C.  The receipt of the stolen App crossed state lines, affected interstate commerce, and that the App is worth more than $5,000.

94) Plaintiffs allege that the named Defendants actively misled, engaged in affirmative acts to conceal, and/or conspired to mislead or conceal, material facts related to this claim which prevented Plaintiffs from becoming aware of their harm. Plaintiffs did not have actual or constructive knowledge of the concealed material facts. Plaintiffs believed the misrepresentations and could not independently verify the concealed facts. As such, Plaintiffs assert that the discovery rule applies to this claim and that the date of discovery was in or about October 2023.

95) Plaintiffs claim that:

A. the named Defendants knew that their actions would cause harm to Plaintiffs;

B. the named Defendants intended to harm Plaintiffs; and,

C. the named Defendants' actions, or conspiracy to act, are a direct and proximate cause of Plaintiffs' damages.

96) Plaintiffs suffered significant damages as a result of the named Defendants actions, or conspiracy to act, in an amount to be proven at trial.

## Merit Contracts

97) Claims in this section (Counts 13-20) are based on facts and claims asserted in Brown v. Gartner, Northern District of Illinois, 1:20-cv-05195 and the claims relate back to the filing date of that complaint, September 2, 2020.

## COUNT 13: Ms. Brown claims Defendant Merit Law breached the Merit Contracts

98) Ms. Brown re-alleges and incorporates by reference each paragraph in this Complaint as if fully set forth here.

99) Ms. Brown alleges that Defendant Merit Law and Ms. Brown entered a written retainer agreement for Defendant Merit Law to collect the Bellwether Judgment for Ms. Brown ("Bellwether Judgment" collection).

100) Ms. Brown also alleges that Defendant Merit Law and Ms. Brown entered a separate written retainer agreement for Defendant Merit Law to represent Ms. Brown in a lawsuit against a home contractor that Ms. Brown utilized ("Contractor Case"). Together the two retainer agreements between Ms. Brown and Defendant Merit Law are referred to as the "Merit Contracts".

101) Ms. Brown performed all acts under the Merit Contracts which required Ms. Brown's performance.

102) Ms. Brown alleges Defendant Merit Law breached both of the Merit Contracts by taking actions including but not limited to:

A. Failing to perform its duties under one or both Merit Contracts including, but not limited to, assigning attorneys who failed to exercise reasonable care, skill, and diligence commonly used by attorneys in similar situations providing legal services;

B. Ceasing collection efforts on the Bellwether Judgment collection:

   i. without notifying Ms. Brown;

   ii. without withdrawing as attorney of record;

   iii. without collecting any of the $436,000 Bellwether Judgment awarded to Ms. Brown;

C. Dismissing the Contractor Case with prejudice, and without Ms. Brown's authorization, after Ms. Brown had won liability on summary judgment; and,

D. Failing to safeguard critical damage documentation that Ms. Brown provided to Defendant Merit Law.

103) Ms. Brown notified Defendants Gartner and Merit Law that they were in default of the Merit Contracts in or about October 2019.

104) Ms. Brown claims that:

A. the named Defendants knew that their actions would cause harm to Ms. Brown;

B. the named Defendants intended to harm Ms. Brown; and,

C. the named Defendants' actions, or conspiracy to act, are a direct and proximate cause of Ms. Brown's damages.

105) Ms. Brown suffered significant damages as a result of the named Defendants actions, or conspiracy to act, in an amount to be proven at trial.

106) In addition, Ms. Brown alleges that the named Defendants actively misled, engaged in affirmative acts to conceal, and/or conspired to mislead or conceal, material facts related to this claim to prevent Ms. Brown from becoming aware of her injuries. Ms. Brown

did not have actual or constructive knowledge of the concealed material facts. Ms. Brown believed the misrepresentations and could not independently verify the concealed facts. As such, Ms. Brown asserts that the discovery rule applies to this claim and that the date of discovery was in or about October 2023.

**COUNT 14: Ms. Brown claims Defendants Kingsley, Gartner, Merit Law and Kingsley Law breached their fiduciary duties and committed legal malpractice with respect to the Contractor Case and/or the Bellwether Judgment collection**

107) Ms. Brown re-alleges and incorporates by reference each paragraph in this Complaint as if fully set forth here.

108) Ms. Brown claims Defendants Kingsley, Gartner, Merit Law and Kingsley Law committed legal malpractice with regard to their handling of the Contractor Case and/or the Bellwether Judgment collection for Ms. Brown. Ms. Brown alleges:

A. The named Defendants agreed to represent Ms. Brown in the Contractor Case and in the Bellwether Judgment collections matters;

B. Ms. Brown agreed to compensate the named Defendants and did in fact compensate the named Defendants.

C. As a result of the attorney-client relationship created by the above conduct of the parties, Defendants Kingsley, Gartner,

Merit Law and Kingsley Law had a duty to represent Ms. Brown with reasonable care, skill, and diligence possessed and exercised by a professional attorney in a similar situation. However, the named Defendants breached that duty of care, loyalty, honesty, fidelity, and good faith; and,

D. The conduct with respect to the legal services provided by Defendants Kingsley, Gartner, Merit Law and Kingsley Law fell below the applicable standard of care and breached the professional duties owed to Ms. Brown.

109) In addition, Ms. Brown alleges Defendants Kingsley, Gartner, Merit Law and Kingsley Law breached their duties owed to Ms. Brown by taking actions including, but not limited to:

A. Failing to exercise reasonable skill and diligence in their actions, or lack thereof, as alleged herein, and failing to exercise such skill, prudence, and diligence as attorneys of ordinary skill and capacity ordinarily possessed by other attorneys of good standing practicing in the same or similar locality under similar circumstances;

B. Violating the standards of professional conduct and ethics, set forth in the Illinois Rules of Professional Conduct;

C. Failing to expeditiously pursue and collect the Bellwether Judgment;

D. Failing to communicate, and/or intentionally misrepresenting, material information to Ms. Brown about the Bellwether Judgment collection;

E. Making decisions and taking actions in the Bellwether Judgment collection without obtaining Ms. Brown's authorization and/or consent;

F. Ceasing efforts to collect the Bellwether Judgment without notifying Ms. Brown;

G. Failing to file an action to pursue collection of the Bellwether Judgment from Defendants Greeby and Vaske individually;

H. Failing to initiate an action to determine that the company that Defendant Bellwether merged with is responsible for Defendant Bellwether's debt;

I. Failing to withdraw as counsel of record on the Bellwether Judgment collection;

J. Failing to zealously pursue and competently prosecute the Contractor Case;

K. Encouraging Ms. Brown to engage in settlement discussions with Contractor for an amount far less than she would have

otherwise received or been awarded had the Contractor Case been properly prosecuted;

L. Making unauthorized decisions and taking unauthorized actions in the Contractor Case for which Ms. Brown had already been awarded liability on summary judgment;

M. Dismissing the Contractor Case with prejudice without receiving authorization from Ms. Brown and before a written settlement agreement was circulated or executed;

N. Refusing to vacate the dismissal of the Contractor Case after dismissing the Contractor Case without Ms. Brown's authorization;

O. Withdrawing from representing Ms. Brown on the Contractor Case settlement after dismissing the Contractor Case with prejudice;

P. Leaving Ms. Brown to represent herself in settlement negotiations and/or a complex damages hearing for the Contractor Case;

Q. Misrepresenting material information to Ms. Brown and to the court, including but not limited to, the status of the Contractor Case settlement agreement;

R. Failing to inform, and/or misrepresenting, material information to Ms. Brown and the court including but not limited to, the status of the Contractor Case, settlement discussions, and the unauthorized actions taken;

S. Failing to respond timely and honestly to Ms. Brown's questions about the Contractor Case, the work actually performed, settlement discussions, and actions taken;

T. Withholding critical documentation related to the Contractor Case from Ms. Brown including but not limited to Ms. Brown's damages documentation; and,

U. Incurring unauthorized costs for the Contractor Case.

110)     It was reasonably foreseeable to the named Defendants that their actions would adversely affect Ms. Brown's claims in the Contractor Case and the Bellwether Judgment collection and would cause Ms. Brown to sustain damages.

111)     Ms. Brown relied on the representations made by the named Defendants and the named Defendants acted to the detriment of Ms. Brown's causes of action in the Contractor Case and the Bellwether Judgment collection.

112)     Ms. Brown alleges that as a result of the named Defendants' breaches, including but not limited to dismissing the

Contractor Case without authorization and failing to return damage documentation to Ms. Brown, Ms. Brown is barred and precluded from pursing actual damages she incurred related to the Contractor Case for which the Contractor had already been found to be liable on summary judgment.

113)    Ms. Brown alleges that but for the named Defendants' breaches, Ms. Brown would have recovered damages and experienced one of two outcomes for the Contractor Case in 2019:

A. If the settlement negotiations were successful, the parties would have executed a settlement agreement and Ms. Brown would have received a monetary settlement in 2019; or,

B. If the settlement negotiations were not successful, the parties would have participated in a damages prove-up hearing for the Contractor Case in October 2019.  Ms. Brown would have been awarded damages and reimbursed for attorney's fees and court costs in an amount far in excess of the settlement amount.

C. However, because the named Defendants' breached their duties, neither of these occurred.

114)    Ms. Brown claims that:

A. the named Defendants knew that their actions would cause harm to Ms. Brown;

B. the named Defendants intended to harm Ms. Brown; and,

C. the named Defendants' actions, or conspiracy to act, are a direct and proximate cause of Ms. Brown's damages.

115)     Ms. Brown alleges that the named Defendants actively misled, engaged in affirmative acts to conceal, and/or conspired to mislead or conceal, material facts related to this claim to prevent Ms. Brown from becoming aware of her injuries. Concealed facts include but are not limited to the named Defendants intentions and motivations to commit the actions described.   Ms. Brown did not have actual or constructive knowledge of the concealed material facts. Ms. Brown believed the misrepresentations and could not independently verify the concealed facts.  As such, Ms. Brown asserts that the discovery rule applies to this claim and that the date of discovery was in or about October 2023.

**COUNTS 15, 16, 17, 18, 19 and 20: With respect to the Merit Contracts, Ms. Brown claims Defendants Bellwether, Gartner, Goldston, Greeby, Huge Legal, Kingsley, Kingsley Law, Merit Law, Montgomery, Vaske, and Williams tortuously interfered with the Merit Contracts (Count 15); and/or, violated the Illinois Deceptive Trade Practices Act (815 ILCS 510/1-7) (Count 16); and/or, violated the Illinois Consumer Fraud Act (815 ILCS 505/1-12) (Count 17); and/or, fraudulently concealed material facts (Count 18); and/or, committed mail fraud 18 U.S.C. §1341 (Count 19) and/or committed wire fraud 18 U.S.C. §1343 (Count 20)**

116)     Ms. Brown re-alleges and incorporates by this reference each paragraph contained in this Complaint as if fully set forth here.

117)     Based on belief and information acquired in 2023, Ms. Brown alleges that Defendants Gartner, Goldston, Greeby, Kingsley, Kingsley Law, Montgomery, Vaske, Williams, Bellwether, and Huge Legal tortuously interfered, or conspired to interfere, with the Merit Contracts (Count 15).  Ms. Brown alleges:

A. The Merit Contracts are two separate written contracts between Ms. Brown and Defendant Merit Law:

B. The named Defendants interfered, or conspired to interfere, knowing that the Merit Contracts are valid contracts;

C. The named Defendants intentionally and willfully conspired to induce Defendant Merit Law to breach the Merit Contracts.  The named Defendants' goal was to prevent Ms. Brown from recovering damages related to the Contractor

Case and the Bellwether Judgment collection in order to cause financial hardship for Ms. Brown;

D. Because of the named Defendants' interference, Defendant Merit Law breached the Merit Contracts;

118)     Based on belief and information acquired in 2023, Ms. Brown alleges Defendants Gartner, Goldston, Greeby, Kingsley, Kingsley Law,  Merit Law, Montgomery, Vaske, Williams, Bellwether, and Huge Legal violated, or conspired to violate, the Illinois Deceptive Trade Practices Act (Count 16) and/or the Illinois Consumer Fraud Act (Count 17) with respect to the Merit Contracts.  In addition, Ms. Brown alleges the named Defendants actively misled, engaged in affirmative acts to conceal, and/or conspired to mislead or conceal, material facts (Count 18) from Ms. Brown with respect to the Merit Contracts. Ms. Brown claims the named Defendants took, or conspired to take, actions including, but not limited to:

A. Defendants Gartner and Kingsley accepting Ms. Brown's payment made pursuant to the Merit Contracts knowing that they would not be performing the contracted services;

B. Misrepresenting to the Contractor Case's court that a settlement agreement had been entered into when the parties were still negotiating the settlement;

C. Misrepresenting to the Contractor Case's court that Defendant Gartner had authority to dismiss the Contractor Case when he did not. Then, dismissing the Contractor Case with prejudice, without Ms. Brown's permission, and without filing an appearance with the court to act on Ms. Brown's behalf;

D. Misrepresenting to Ms. Brown that the Contractor's attorneys were insisting on the inclusion of undesirable terms in the proposed settlement agreement;

E. Misrepresenting to Ms. Brown that collections were underway for the Bellwether Judgment, even though collection efforts had stopped;

F. Remaining listed as attorney of record on the Bellwether Judgment after stopping collection efforts, while knowing that doing so would prevent Ms. Brown from being contacted by Defendant Bellwether's asset holders.

119)    Based on information and belief acquired in 2023, Defendants Gartner, Goldston, Greeby, Kingsley, Montgomery, Vaske, Williams, Bellwether, Huge Legal, Kingsley Law, and Merit Law committed, or conspired to commit, fraud and mail fraud (Count 19) and/or wire fraud (Count 20) by carrying out a scheme to utilize US

Mail, phone, and/or electronic communications to defraud Ms. Brown with respect to the Merit Contracts.[14]  Ms. Brown alleges Defendants Merit Law, Gartner and Kingsley took, and the named Defendants conspired to take, actions including but not limited to:

A.  Using phone and/or electronic communications and/or US Mail to delay the Contractor prove-up hearing for approximately one year, while representing to Ms. Brown that the October 2019 prove-up hearing date was the earliest date available following the summary judgment award in May 2018;

B.  Coordinating with Contractor's attorneys via phone and/or electronic communications and/or US Mail to file an agreed order to dismiss the Contractor Case with prejudice without Ms. Brown's knowledge or consent;

C.  Informing Ms. Brown via phone and/or electronic communications and/or US Mail that Defendant Gartner had dismissed the Contractor Case with prejudice, and without first obtaining Ms. Brown's permission to dismiss it;

D.  Misrepresenting to Ms. Brown via phone and/or electronic communications and/or US Mail that dismissing the

---

[14] Additional details of specific instances of wire and mail fraud will be provided following discovery.

2nd Amended Complaint, BW Trust v. Gartner, 24-cv-13132          p55

Contractor Case before a settlement agreement was signed was standard practice;

E. Attending phone conferences with Ms. Brown to discuss critical matters related to the settlement of the Contractor Case, even though steps were not being taken to finalize the settlement agreement;

F. Misrepresenting to Ms. Brown via phone and/or electronic communications and/or US Mail that the Contractor Case settlement payments would begin immediately, knowing that that information was false;

G. Misrepresenting to Ms. Brown via phone and/or electronic communications and/or US Mail that the Contractor's attorneys were not flexible on certain provisions in the settlement agreement, which representations were false;

H. Conspiring with individuals via phone and/or electronic communications and/or US Mail to prevent Ms. Brown from receiving the damages she had been awarded in the Bellwether Judgment and the Contractor Case settlement;

I. Misrepresenting to Ms. Brown via phone and/or electronic communications and/or US Mail that citations to discover Defendant Bellwether's assets had been mailed to Defendant

Bellwether's account holders, but responses were not received;

J. Communicating with Defendant Bellwether's asset holders via phone and/or electronic communications and/or US Mail, yet not collecting the assets to satisfy the Bellwether Judgment; and/or,

K. Discussing with Ms. Brown via phone and/or electronic communications, the filing of an action to access Defendant Bellwether's owners' personal assets and/or the assets of the successor in interest to satisfy the Bellwether Judgment, but then not filing the action.

120)    Ms. Brown claims that:

A. the named Defendants knew that their actions, or conspiracy to act, would cause harm to Ms. Brown;

B. the named Defendants intended to harm Ms. Brown; and,

C. the named Defendants' actions, or conspiracy to act, are a direct and proximate cause of Ms. Brown's damages.

121)    Ms. Brown suffered significant damages as a result of the named Defendants actions, or conspiracy to act, in an amount to be proven at trial.

122)     Ms. Brown alleges that the named Defendants actively misled, engaged in affirmative acts to conceal, and/or conspired to mislead or conceal, material facts related to this claim to prevent Ms. Brown from becoming aware of her injuries.  Ms. Brown did not have actual or constructive knowledge of the concealed material facts. Ms. Brown believed the misrepresentations and could not independently verify the concealed facts.  As such, Ms. Brown asserts that the discovery rule applies to this claim and that the date of discovery was in or about October 2023.

## Racketeer Influenced and Corrupt Organization Claims

**COUNT 21: Plaintiffs claim Defendants Gartner, Goldston, Greeby, Kingsley, Kingsley Law, Kohmedia, Koht,  Merit Law, Montgomery,  Vaske,  Williams, Bellwether, Huge Legal, Kohmedia violated the R.I.C.O Act 18 U.S.C. §1964, by violating 18 U.S.C. §1962(c, d)**

123)     Plaintiffs re-allege and incorporate by this reference each paragraph contained in this Complaint as if fully set forth here.

124)     **Enterprise:** Plaintiffs claim that Defendants Goldston, Montgomery and Williams are acting as an association-in-fact ("Enterprise-0") and organized to deprive Legacy of its assets. Plaintiffs claim Enterprise-0 conducts business and/or participates in

racketeering activities that affect interstate commerce in violation of the RICO Act 18 U.S.C. §1962(c) and/or (d).

125) **Scheme to defraud and statutes violated:**

A. **18 U.S.C. §1962(c):** Plaintiffs allege Enterprise-0 conducts business through a pattern of racketeering activities by taking actions including but not limited to, theft, receipt of stolen property, misappropriation of trade secrets, wire fraud and mail fraud. Enterprise-0 utilizes racketeering activities to:

i. Fraudulently-acquire Legacy's assets;

ii. Prevent Plaintiffs from becoming aware that its assets had been fraudulently-conveyed; and,

iii. Eliminate Plaintiffs' financial resources to prevent Plaintiffs from reclaiming Legacy's assets.

B. **18 U.S.C. §1962(d):** Plaintiffs allege Enterprise-0 conspired with other individuals and entities to conduct its racketeering activities. Enterprise-0's co-conspirators include, but are not limited to:

1. Enterprise-0 conspired with Defendants Kohmedia, Koht as set forth in Counts 5, 6, 10-12;

2. Enterprise-0 conspired with Defendants Gartner, Kingsley, Kingsley Law, Merit Law as set forth in Counts 19, 20;

3. Enterprise-0 conspired with Defendants Bellwether, Vaske and Greeby as set forth in Counts 19, 20; and,

4. Enterprise-0 conspired with Defendant Huge Legal as set forth in Counts 5, 12, 19, 20.

126) **Predicate racketeering acts**: Plaintiffs allege Enterprise-0 has conducted racketeering activities to achieve the goals listed herein, including predicate acts such as:

127) With respect to the Kohmedia Contract and the App:

A. Misappropriating Legacy's trade secrets contained in and related to the App violating 18 U.S.C. §1836 (Count 5);

B. Committing mail fraud with respect to the Kohmedia Contract and its breach violating 18 U.S.C. §1341 (Count 6);

C. Committing wire fraud with respect to the Kohmedia Contract and its breach violating 18 U.S.C. §1343 (Count 7);

D. Violating the Computer Fraud and Abuse Act (18 U.S.C. §1030) with respect to Legacy's assets on Kohmedia servers (Count 10) ;

E. Committing the theft and unlawful transport of the App and its trade secrets violating 18 U.S.C. §2314 (Count 11); and,

F. Receiving stolen property (the App and related trade secrets) violating 18 U.S.C. §2315 (Count 12).

128) With respect to the Merit Contracts:

A. Committing mail fraud violating 18 U.S.C. §1341(Count 19)

B. Committing wire fraud violating 18 U.S.C. §1343 (Count 20)

129) **Interstate commerce:** Plaintiffs allege Enterprise-0's actions affect interstate commerce as indicated in the individual counts.

130) **Continued threat:** Plaintiffs allege Enterprise-0, through its agents and/or co-conspirators, continue to pose a threat to Plaintiffs by using racketeering activities to:

A. Continue to exert ownership over the stolen App and trade secrets;

B. Continue to cause financial hardship for Ms. Brown;

C. Cause Ms. Brown's US mail and package deliveries to be intercepted; and

D. Cause Ms. Brown's devices to be targeted and breached.

131) **Unnamed Participants:** Plaintiff believes W. Kelly Shannon and Gorman E. Brown are also members of Enterprise-0.

Plaintiff believes that there are additional unknown members of Enterprise-0. Ms. Brown is confident she will be able to confirm the identity of additional members of Enterprise-0 during discovery. [15]

## Other Claims

### COUNT 22:  Ms. Brown claims Defendants intentionally inflicted emotional distress

132)     Ms. Brown re-alleges and incorporates by this reference each of the preceding paragraphs as if they are fully set forth here.

133)     Ms. Brown claims the Defendants willfully and intentionally took, or conspired to take, numerous actions set forth herein which intentionally caused severe emotional distress for Ms. Brown.

134)     Ms. Brown claim that:

    A. Defendants knew that their actions would cause Ms. Brown to experience financial hardship, pecuniary losses, mental anguish, and extreme emotional distress;

    B. Defendants intended to harm Ms. Brown; and,

    C. Defendants' actions, or conspiracy to act, are a direct and proximate cause of Ms. Brown's damages.

---

[15] Plaintiffs believe there is a related entity, Enterprise 1, as set forth in Brown v. ServiceNow, 25-cv-5629, Northern District of Illinois.  Ms. Brown believes Enterprise 1 includes the members of Enterprise-0 and several additional individuals.

135) Ms. Brown has suffered, and continues to suffer emotional distress, mental anguish, embarrassment, and anxiety because of the Defendants' conduct.

136) Ms. Brown alleges that the Defendants actively misled, engaged in affirmative acts to conceal, and/or conspired to mislead or conceal, material facts related to this claim to prevent Ms. Brown from knowing who was harming them. Ms. Brown did not have actual or constructive knowledge of the concealed material facts. Ms. Brown could not determine or independently verify the concealed facts. As such, Ms. Brown asserts that the discovery rule applies to this claim and that the date of discovery was in or about October 2023.

## COUNT 23: Plaintiffs claim Corporate Defendants are vicariously liable for the acts of their agents and employees

137) Plaintiffs re-allege and incorporate by this reference each paragraph in this Complaint as if fully set forth here.

138) Plaintiffs claim that each of the Corporate Defendants are responsible for the acts of their agents, employees, members, and/or representatives, who were working within the scope of their employment or agency.

**COUNT 24: Plaintiffs claim Grand Prix is responsible for Defendant Bellwether's debts and obligations**

139)     Plaintiffs re-allege and incorporate by reference each paragraph in this Complaint as if fully set forth here.

140)     Plaintiffs allege that Bellwether Creation Company LLC, an Illinois LLC, merged its assets with Grand Prix Printing LLC, an Iowa LLC and because of that merger, Grand Prix Printing is responsible for Bellwether Creation Company's debts and obligations.

141)     Based on belief and information gathered in 2023, Plaintiffs claim:

   A. The entity with whom Legacy executed the Bellwether Contract was Bellwether Creation Company LLC ("Bellwether Creation").

   B. In or about May 2016, two of the owners of Bellwether Creation represented to Legacy that Bellwether Creation would be merging with another business and that Bellwether Creation's asset would be included in that merger.

   C. Bellwether Creation was voluntarily dissolved in Illinois on or about June 30, 2017 and Bellwether Creation's assets were merged with Grand Prix Printing LLC ("Grand Prix"), an Iowa LLC, under one of Grand Prix's assumed names.[16]

---

[16] Grand Prix's assumed names include but are not necessarily limited to the Label Factory and the Label Advantage.

D. Following the merger, operations under the Bellwether Creation name ceased and existing Bellwether Creation contracts were serviced under a business alias of Grand Prix.

E. Grand Prix is owned by Kent Vaske who is the father of a co-owner of Bellwether Creation.

142) Plaintiffs claim that since Bellwether Creation merged with Grand Prix, Grand Prix is responsible for Bellwether Creation's debts and obligations.

## DAMAGES

143) Plaintiffs pray for judgment against each named Defendant as follows:

A. That this Court enter judgment in Plaintiffs' favor against Defendants jointly and severally:

    i. for all actual, compensatory, exemplary, punitive, and incidental damages provided by law;

    ii. For R.I.C.O claims, treble actual damages;

    iii. For reimbursement for all attorney's fees and costs;

    iv. For reimbursement of all contract payments that Plaintiffs made on the Kohmedia Contract and Merit Contracts;

v.      For the Merit Contracts, Ms. Brown's injuries also include the full value of her claims, loss of verdict, settlement, or award, and interest that Ms. Brown would have recovered in both the Contractor Case[17] and the Bellwether Judgment collection;

vi.      For exemplary damages from Defendants Merit Law and Gartner, as Defendant Gartner failed to ask, and did not receive, Ms. Brown's permission prior to dismissing the Contractor Case, with prejudice, after Ms. Brown had won liability on summary judgment; and,

vii.      For exemplary damages from Defendants Kingsley, Gartner and Merit Law as they misplaced and failed to return Ms. Brown's damage documentation related to the Contractor Case;

viii.      For exemplary damages from Defendants Kingsley and Merit Law as Defendant Kingsley intentionally stopped the collection process for the Bellwether Judgment without Ms. Brown's knowledge or authorization, then failed to withdraw as attorney of record for the collection;

---

[17] Less the collected settlement amount.

ix. For exemplary damages from Defendants Kohmedia and Koht for intentionally corrupting the App's software code to prevent Legacy from being able to patch the App to launch it;

x. For damages in an amount which is sufficient to properly and adequately compensate Plaintiffs for all direct and proximate losses resulting from Defendants' acts and omissions and for such other and further relief as justice may require;

xi. For prejudgment and post judgment interest;

xii. For consequential damages resulting from losses incurred including but not limited to emotional distress, mental pain and anguish,

B. Grant such other and further relief as this Court deems just and proper.

***Respectfully Submitted: June 20, 2025***

/s/ Kimberly Jean Brown

Kimberly Jean Brown, individually
1026 E. 46th St, Unit 2E
Chicago, IL. 60653
(773) 673-0324
Kim@PrivacyGladiators.com
***Plaintiff,***

2nd Amended Complaint, BW Trust v. Gartner, 24-cv-13132          p67

and,

By: /s/ Kimberly Jean Brown

Kimberly Jean Brown as Assignee
of the Brown Washington Trust's
interest in Legacy Complete
1026 E. 46th St, Unit 2E
Chicago, IL. 60653
(773) 673-0324
Kim@PrivacyGladiators.com
***Derivative Plaintiff on behalf
of Legacy Complete***